# EXHIBIT A

**CT Corporation**
**Service of Process Notification**
01/26/2026
CT Log Number 551198903

## Service of Process Transmittal Summary

**TO:**  Brian Harstine
Premium Brands Services LLC
8323 WALTON PKWY
NEW ALBANY, OH 43054-9522

**RE:**  **Process Served in California**

**FOR:**  Premium Brands Opco LLC  (Domestic State: OH)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | SARAH ROBBINS, for herself, as a private attorney general, and on behalf of all others similarly situated vs. Premium Brands Opco LLC |
| **CASE #:** | 26CUB00051 |
| **PROCESS SERVED ON:** | C T Corporation System, GLENDALE, CA |
| **DATE/METHOD OF SERVICE:** | By Process Server on 01/26/2026 at 12:50 |
| **JURISDICTION SERVED:** | California |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  UPS Next Day Air |
| | Image SOP |
| | Email Notification,  Brian Harstine  brian.harstine@knitwellgroup.com |
| | Email Notification,  LAURA VITOBELLO  laura.vitobello@knitwellgroup.com |
| | Email Notification,  MICHAEL SCHEPT  michael.schept@ascenaretail.com |
| | Email Notification,  Mara Calame  mara.calame@knitwellgroup.com |
| **REGISTERED AGENT CONTACT:** | C T Corporation System |
| | 330 N BRAND BLVD |
| | STE 700 |
| | GLENDALE, CA 91203 |
| | 866-401-8252 |
| | LargeCorporationTeam@wolterskluwer.com |

**DOCKET HISTORY:**

| DOCUMENT(S) SERVED | DATE/METHOD OF SERVICE | TO | LOG NUMBER |
|---|---|---|---|
| -- | By Traceable Mail on 01/06/2026 at 09:03 | Brian Harstine Premium Brands Services LLC | 551027694 |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.



# PROCESS SERVER DELIVERY DETAILS

**Date:**                                    Mon, Jan 26, 2026
**Server Name:**                             Jimmy Lizama

| | |
|---|---|
| Entity Served | PREMIUM BRANDS OPCO LLC |
| Case Number | 26CUB00051 |
| Jurisdiction | CA |

| Inserts | |
|---|---|
| | |



SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**ELECTRONICALLY FILED**
Superior Court of California,
County of Kern
By: Alejandra Velazquez
Deputy Clerk
**01/9/26 3:28 PM**

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

Premium Brands Opco LLC d/b/a LOFT

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Sarah Robbins, for herself, as a private attorney general, and on behalf of all others similarly situated

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*  Sup. Ct. of CA County of Kern

Metropolitan Division, 1215 Truxtun Ave, Bakersfield, CA 93301

CASE NUMBER:
*(Número del Caso):*
**26CUB00051**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Daniel M. Hattis, Hattis Lukacs & Corrington, 11711 SE 8th St Ste 120, Bellevue WA 98005 (425) 233-8650

DATE: **01/12/2026**                    *Tara Leal*              Clerk, by      **Alejandra Velazquez**                , Deputy
*(Fecha)*                                                        *(Secretario)*                                                *(Adjunto)*

*(For proof of service of this summons, use* Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario* Proof of Service of Summons, *(POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):*  Premium Brands Opco LLC d/b/a LOFT
   under: ☐ CCP 416.10 (corporation)              ☐ CCP 416.60 (minor)
           ☐ CCP 416.20 (defunct corporation)      ☐ CCP 416.70 (conservatee)
           ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
           ☒ other *(specify):*  Corp. Code 17701.16, LLC
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

For your protection and privacy, please press the Clear This Form button after you have printed the form.

Print this form    Save this form    Clear this form

**ELECTRONICALLY FILED**
Superior Court of California,
County of Kern
By: Alexandra Valles-Guerrero
Deputy Clerk
01/7/26 4:35 PM

Daniel M. Hattis (SBN 232141)
Email: dan@hattislaw.com
Paul Karl Lukacs (SBN 197007)
Email: pkl@hattislaw.com
HATTIS LUKACS & CORRINGTON
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
Telephone: (425) 233-8650
Facsimile: (425) 412-7171

*Attorneys for Plaintiff*
*and the Proposed Class*

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF KERN

UNLIMITED CIVIL

| | |
|---|---|
| SARAH ROBBINS,<br>for herself,<br>as a private attorney general,<br>and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PREMIUM BRANDS OPCO LLC D/B/A<br>LOFT,<br><br>Defendant. | Case No.  26CUB00051<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR:**<br><br>**(1) VIOLATION OF CAL. CIVIL CODE § 1750** *et seq.***;**<br><br>**(2) VIOLATION OF CAL. BUSINESS & PROFESSIONS CODE § 17500** *et seq.***;**<br><br>**(3) VIOLATION OF CAL. BUSINESS & PROFESSIONS CODE § 17200** *et seq.*<br><br>JURY TRIAL DEMANDED |

CLASS ACTION COMPLAINT

1    Plaintiff Sarah Robbins, individually, as a private attorney general, and on behalf of all

2    others similarly situated, alleges as follows, on personal knowledge and the investigation of her

3    counsel, against Defendant Premium Brands Opco LLC d/b/a LOFT ("Loft" or "Defendant"):

4    **I.    <u>INTRODUCTION AND SUMMARY</u>**

5    1.    Defendant owns and operates the Loft.com website and Loft retail stores where

6    it advertises, markets, and sells casual and business casual attire for women directly to

7    consumers throughout California and the United States. Almost all of the products offered by

8    Loft are branded as products or as "Loft" products or as Loft sub-brand "Lou & Grey"

9    products, and are offered and sold exclusively by Loft.

10    2.    For years, Loft has engaged in a massive and consistent false discount

11    advertising scheme across its website and in its retail stores. Specifically, Loft advertises

12    perpetual or near-perpetual discounts—typically 30% to 60% off—on all its items. These

13    discounts are taken from Loft's inflated and self-created list prices for its items. Loft's

14    advertised discounts are viewed both under the law and by reasonable consumers to refer to

15    discounts from Loft's own regular offering prices for the items. However, Loft's advertised

16    discounts are false because Loft never or almost never offers or sells the items at their list price.

17    3.    Loft also falsely advertises that the purported savings are for a limited time and

18    indicates that its items will return to the full price after the sale ends, when in fact the

19    advertised savings are perpetual and never-ending.

20    4.    Loft's false discount advertising is so pervasive across all of its products and all

21    of its advertising that it is apparent that the heart of Loft's marketing plan is to deceive the

22    public.

23    5.    Loft's intent is to trick consumers into believing that its products are worth, and

24    have a market value equal to, the inflated reference price, and that the lower advertised sale

25    price represents a special bargain. Loft perpetrates this illegal scheme in order to induce

26    consumers to purchase its products and to charge more for its products than it otherwise could

27    have charged.

28

---

CLASS ACTION COMPLAINT

- 2 -

HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

6.      Loft's false discount advertising harms consumers like Plaintiff by causing them to pay more than they otherwise would have paid and to buy products that they otherwise would not have bought. *See Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013) ("[W]hen a consumer purchases merchandise on the basis of false price information, and when the consumer alleges that he would not have made the purchase but for the misrepresentation, he has standing to sue under the UCL and FAL because he has suffered an economic injury.").

7.      Customers do not enjoy the actual discounts Loft promises them, and the products are not in fact worth the amount that Loft represents to them. Loft's deceptive pricing scheme also artificially increases the demand for its products and causes all customers, including Plaintiff and Class members, to pay price premiums to Loft.

8.      Loft's false discount advertising violates California's Consumers Legal Remedies Act (CLRA), California Civil Code § 1750 *et seq.*; False Advertising Law (FAL), California Business & Professions Code § 17500 *et seq.*; and Unfair Competition Law (UCL), California Business & Professions Code § 17200 *et seq.*, in numerous ways, as detailed in this Complaint.

9.      Plaintiff brings this lawsuit individually and on behalf of a class of Californian consumers who purchased from the Loft website one or more products advertised with a discount. Plaintiff seeks restitution and/or disgorgement for herself and for each of the Class members. Additionally, Plaintiff, acting as a private attorney general, seeks public injunctive relief to protect the general public by enjoining Loft from engaging in the unlawful false advertising scheme alleged herein.

## II.     THE PARTIES

10.     Plaintiff Sarah Robbins is a citizen and resident of the city of Tehachapi, in Kern County, California, and is an unsophisticated consumer party.

11.     Defendant Premium Brands Opco LLC is an Ohio limited liability company headquartered at 7 Times Square, New York, New York 10036. On December 23, 2020, Premium Apparel LLC, an authorized member of Premium Brands Opco LLC, acquired Loft from its former owner, Ascena Retail Group, Inc. Premium Brands Opco LLC now owns and

1  operates the Loft brand, including its website and retail stores.[1] Premium Brands Opco LLC

2  directed marketing operations of the Loft brand and the perpetration of the unlawful actions

3  described herein.

4      12.    Loft is an American marketer and retail seller of casual and business casual

5  attire for women. Almost all the items offered for sale by Loft on its website www.loft.com and

6  in its retail stores are branded as "Loft" products and are offered and sold exclusively by Loft.

7  Loft has 373 retail stores across the United States, including 21 in California. Loft also

8  maintains an online shopping website, www.loft.com, where customers can purchase items and

9  ship them to anywhere in the United States, including California.

10     13.    Premium Brands Opco LLC is referred to as "Loft" or Defendant" in this

11  Complaint.

12  **III.    JURISDICTION AND VENUE**

13     14.    **Subject Matter Jurisdiction.** The Court has subject matter jurisdiction over

14  this civil action in that Plaintiff brings claims exclusively under California law, including the

15  Consumers Legal Remedies Act, California Civil Code § 1750 *et seq.*; the False Advertising

16  Law, California Business & Professions Code § 17500 *et seq.*; and the Unfair Competition

17  Law, California Business & Professions Code § 17200 *et seq.*

18     15.    **Personal Jurisdiction.** This Court has personal jurisdiction over Defendant

19  pursuant to California Code of Civil Procedure Section 410.10 because: (1) Defendant is

20  authorized to do business and regularly conducts business in California including via its retail

21  website www.loft.com and operating 21 retail stores within California; (2) the claims alleged

22  herein took place in California; and/or (3) Defendant has committed tortious acts within

23  California or has committed tortious acts outside California which had an impact within

24

25  [1] *See* Sycamore Partners news article regarding Premium Apparel LLC's acquisition of
Loft at https://www.sycamorepartners.com/news-article/ascena-retail-group-completes-sale-of-
26  ann-taylor-loft-lougrey-and-lane-bryant-to-sycamore-partners; *see also* Premium Brands Opco
LLC's 2025 annual report listing Premium Apparel LLC as an authorized member at
27  https://search.sunbiz.org/Inquiry/CorporationSearch/GetDocument?aggregateId=forl-
m21000000795-b5e6d2a1-6268-46d8-8880-9c3c38109332&transactionId=m21000000795-
28  798b360e-8622-4993-ae3f-2fd884239143&formatType=PDF.

---

CLASS ACTION COMPLAINT

- 4 -

1    California (as alleged, without limitation, throughout this Complaint). Defendant has sufficient

2    minimum contacts with California to render the exercise of jurisdiction by this Court

3    permissible.

4          16.    **Venue.** Venue is proper under Cal. Civil Code § 1780(d) because a substantial

5    portion of the transactions at issue occurred in Kern County, including that Plaintiff made her

6    purchase within Kern County. Plaintiff's declaration establishing that this Court is a proper

7    venue for this action is attached hereto as **Exhibit A**.

8    **IV.    LOFT'S FALSE DISCOUNT ADVERTISING SCHEME**

9          17.    Defendant owns and operates the Loft.com website and Loft retail stores

10    (including 21 in California) where it advertises, markets, and sells casual and business casual

11    attire for women directly to consumers throughout California and the United States. Almost all

12    of the products offered by Loft are branded as products or as "Loft" products or as Loft sub-

13    brand "Lou & Grey" products, and are offered and sold exclusively by Loft.

14          18.    For years, Loft has engaged in a massive and consistent false discount

15    advertising scheme across its website and in its retail stores. Specifically, Loft advertises

16    perpetual or near-perpetual discounts—typically 30% to 60% off—on all its items. These

17    discounts are taken from Loft's inflated and self-created list prices for its items. Loft's

18    advertised discounts are viewed both under the law and by reasonable consumers to refer to

19    discounts from Loft's own regular offering prices for the items. However, Loft's advertised

20    discounts are false because Loft never or almost never offers or sells the items at their list price.

21          19.    Loft also falsely advertises that the purported savings are for a limited time and

22    indicates that its items will return to the full price after the sale ends, when in fact the

23    advertised savings are perpetual and never-ending.

24          20.    Loft aggressively advertises discounts throughout its website and in its retail

25    stores.

26          21.    On its website product list pages, Loft typically advertises the discounts by

27    displaying a discounted price in red font, next to a higher purported strikethrough regular price

28    (the "reference price"). Next to the reference price, Loft then lists stated percentage-off

---

CLASS ACTION COMPLAINT

    - 5 -

HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

purported savings, followed with the words "OFF! PRICE AS MARKED!" in red font to further indicate that the reference price was Loft's previous and regular selling price for the product. If Loft has any other ongoing promotions, such as free shipping or additional stacked "extra" discounts that will be taken off during checkout, they will be displayed next to the strikethrough reference price (e.g., "$35.98 $79.95 55% OFF + FREE SHIP! PRICE AS MARKED! EXTRA 15% OFF YOUR PURCHASE! APPLIED IN CART!").

22.    On the individual product page, Loft similarly displays the selling price in red font next to the strikethrough reference price, the purported percentage-off savings, and any other ongoing promotions in red font (e.g., "$35.98 $79.95 55% OFF + FREE SHIP! PRICE AS MARKED! EXTRA 15% OFF YOUR PURCHASE! APPLIED IN CART!"). See the screenshots below taken directly from the Loft website on December 16, 2025.

**Product List Page Displaying Discounted Loft Clothing – 12/16/2025**



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

### Product Page of Lou & Grey Ribtrim Luvstretch Joggers – 12/16/2025



23.     Loft makes similar pricing and discount representations in the online shopping cart, where it displays the strikethrough reference price next to the selling price (e.g., "~~$79.95~~ $35.98").

### Loft Online Shopping Cart – 12/16/2025



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

24.     Loft intends that consumers interpret and understand the strikethrough reference prices to stand for Loft's regular selling prices for those products. Loft intends that consumers understand the reference price to reflect Loft's regular former price for the product. Loft intends that consumers understand the reference price to represent the value of the product. Loft intends that consumers understand and believe that by purchasing the product that day, consumers will enjoy an unusual and special bargain—specifically, that consumers will enjoy the advertised percentage-off savings from the product's regular price.

25.     Plaintiff's counsel's investigation has revealed that Loft advertises perpetual discounts on virtually all of its products. These advertised discounts are false as based on counsel's data, Loft never or almost never offers its products at the strikethrough reference price.

26.     For example, the Loft's Lou & Grey Ribtrim Luvstretch Joggers (the "Joggers") pictured above were on sale for $35.98 at "55% OFF" from a strikethrough reference price of $79.95 as of December 16, 2025. There were also additional stacked "extra" discounts that would be applied to the $35.98 price after a consumer adds the Joggers to his or her shopping cart. However, counsel's investigation found that this advertised discount and the reference price advertised for the Joggers were false. In fact, based on the pricing data collected by Plaintiff's counsel, ever since at least August 29, 2023, Loft has always sold the Joggers at a discount for less than the purported regular selling price of $79.95. Loft has perpetually advertised the Joggers between the prices of $35.98 to $59.96 with purported percentage-off discounts of between 25% and 55% between August 29, 2023 and December 25, 2025.

27.     For example, as reflected in the screenshots below: On August 29, 2023, the Joggers were on sale for $59.96 at "25% OFF" the strikethrough reference price of $79.95. On March 21, 2024, the Joggers were on sale for $47.97 at "40% OFF" the reference price of $79.95. On April 6, 2025, the Joggers were on sale for $39.97 at "50% OFF" the reference price of $79.95. On August 15, 2025, the Joggers were on sale for $47.97 at "40% OFF" the reference price of $79.95. On December 16, 2025, the Joggers were on sale for $35.98 at "55% OFF" the reference price of $79.95.

HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Loft Perpetually Markets Products With False Percentage-Off Discounts**

**Example: Lou & Grey Ribtrim Luvstretch Joggers**

**08/29/2023**

Selling Price: $59.96
Reference Price: $79.95
"25% OFF!"



**03/21/2024**

Selling Price: $47.97
Reference Price: $79.95
"40% OFF!"



**04/06/2025**

Selling Price: $39.97
Reference Price: $79.95
"50% OFF!"



**08/15/2025**

Selling Price: $47.97
Reference Price: $79.95
"40% OFF!"



**12/16/2025**

Selling Price: $35.98
Reference Price: $79.95
"55% OFF"



28.    Based on counsel's investigation, and as this example demonstrates, Loft invents its purported regular prices (the strikethrough reference prices) out of thin air. Loft's reference prices and advertised discounts have no basis or relationship to reality.

CLASS ACTION COMPLAINT

- 9 -

29.     Loft's false discount advertising of the Joggers described above is typical and representative of the false discount advertising Loft perpetrates on its website for all of its "discounted" products.

30.     Loft also advertises phony seasonal or other time-limited event sales to induce consumers to purchase the products immediately before they supposedly return to their (fictitious) reference prices. For example, based on counsel's data, on April 17, 2025, the Loft homepage advertised a "Friends & Family Event" offering a sale for "40% off entire purchase." Seeing this, a reasonable consumer would believe he or she needed to act quickly to take advantage of this sale before the "event" ends and the items return to their normal prices.

31.     However, unbeknownst to consumers, Loft's "40% off" sales (and other similar sales) are constantly reoccurring and never truly end. For example, one month later on May 23, 2025, the Loft homepage advertised a "Summer Starts Now" sale with the exact same "40% off entire purchase" language. Even nearly six months later on November 5, 2025, Loft continued to advertise a substantially similar sale, this time stating "40% off your purchase." This continued on December 9, 2025, when Loft's homepage advertised an "upgrade your winter style" sale once again offering "40% off your purchase." See example screenshots below.

HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

**Loft Home Page – 04/17/2025**



**Loft Home Page – 05/23/2025**



**Loft Home Page – 11/05/2025**



**Loft Home Page – 12/09/2025**

HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

32.     In reality, on all four days (like on every other day), Loft was actually just offering all of its products at their normal and usual—and falsely discounted—prices.

33.     Loft makes similar representations in its retail stores. For instance, Loft frequently has signs at the front window and throughout the inside of its retail stores. These signs advertise purported percentage-off discounts and sales which are substantially the same as the discounts and sales offered on Loft's website.

34.     For example, on April 17, 2025, while the Loft website was advertising the "Friends & Family Event" sale for "40% off entire purchase" (see screenshot above), Loft retail stores had signs advertising the same "Friend & Family Event" sale for "40% off entire purchase." Similarly, on November 5, 2025, while the Loft website was advertising a "40% off your purchase" sale (see screenshot above), Loft retail stores had signs offering a substantially similar "up to 40% off your purchase" sale. See photographs of the Loft retail store in Bellevue, Washington below, taken as part of counsel's investigation.

## Loft's In-Store Discount Advertising

| 04/17/2025 | 11/05/2025 |
| --- | --- |

 

35.     Loft represents that these purported discounts are taken from the original selling price of its items, as shown by the prices listed on the price tags. These price tag prices match

HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

1  the strikethrough reference prices shown on Loft's website. However, just like the purported

2  percentage-off discounts advertised on the website, Loft's in-store discounts are similarly

3  never-ending and false because Loft never of almost never sells the items at their list prices.

4
   **V.    PLAINTIFF'S ALLEGATIONS ARE BASED ON HER COUNSEL'S**
5       **COMPREHENSIVE INVESTIGATION INTO LOFT'S PRACTICES**

6       36.    Plaintiff's allegations concerning Loft's false discount advertising are based on a

7  comprehensive investigation by Plaintiff's counsel of Loft's pricing practices for a period of 7

8  years. Plaintiff's counsel has been monitoring and scraping the Loft website on an automated

9  daily basis with a proprietary software program since November 16, 2018.

10      37.    Plaintiff's counsel has compiled and extracted daily pricing and marketing data

11  from the website for most of the products Loft has offered during this time. In total, Plaintiff's

12  counsel has assembled and analyzed an exhaustive historical database of daily prices and time-

13  stamped screenshots of over 6.7 million daily offerings of approximately 55,000 products over

14  this 7-year period.

15      38.    Plaintiff's counsel's investigation and data shows that Loft advertises perpetual

16  discounts for nearly all of its products, typically ranging from 30% to 60% off every product.

17      39.    The percentage-off and other discounts are always false, and Loft's list prices to

18  which the discounts are applied are false and inflated. In fact, for the overwhelming majority of

19  the products that Loft advertises with a discount, Loft has never—not even for a single day—

20  offered the product at the list price without a discount.

21      40.    Plaintiff's counsel has also investigated Loft's physical retail stores on an at

22  least monthly basis since September 2024. Plaintiff's counsel has compared the Loft retail store

23  reference prices and discounts (including those printed on product tags and the percentage-off

24  signage posted throughout the stores), to the Loft website strikethrough prices and discounts for

25  those products. Plaintiff's counsel has found that Loft's reference prices, advertised percentage-

26  off discounts, and the resulting "discounted" prices for its products have been and continue to

27  be substantially the same for its products both online and in-store.

28

---

CLASS ACTION COMPLAINT

- 13 -

41.    Notably, based on counsel's investigation, if a consumer places an order through a Loft retail store, the email confirmation they receive from Loft will state that his or her order was both an "Order From Store" and a "Loft.com Order." Loft intends buying from its stores and from its website to be a unified, consistent experience for consumers. See the below screenshot of a Loft email receipt from an in-store order.

### Loft In-Store Order Receipt



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

42.     Based on counsel's investigation, Loft's false discount advertising scheme has been ongoing since at least 2018.

43.     Loft's false discount advertising is so pervasive across all of its products and in all of its advertising that it is apparent that the heart of Loft's marketing plan is to deceive the public.

44.     Counsel's investigation into Loft's false discount advertising scheme is as thorough as possible under the circumstances. Thus, Plaintiff's allegations which are based on information and belief are permissible. "Without an opportunity to conduct any discovery, [Plaintiff] cannot reasonably be expected to have detailed personal knowledge of [Loft's] internal pricing policies or procedures." *Rubenstein v. Neiman Marcus Grp. LLC*, 687 F. App'x 564, 568 (9th Cir. 2017). "Because [Plaintiff] need not specifically plead facts to which [she] cannot 'reasonably be expected to have access,' [her] allegations regarding the fictitious nature of the [reference] prices may properly be based on personal information and belief at [the pleading] stage of the litigation." *Id.* Here, Plaintiff's allegations are based not only on information and belief, but also on a comprehensive investigation of Loft's historical website advertising and in-store advertising which was as thorough as possible under the circumstances.

## VI.    LOFT'S FALSE DISCOUNT ADVERTISING SCHEME HARMS CONSUMERS AND VIOLATES CALIFORNIA LAW

45.     Loft perpetrates this false discount advertising scheme because it works—lying about discounts increases demand and increases Loft's revenues and profits.

46.     Indeed, decades of academic research have established that the use of reference prices and discount advertising like that utilized by Loft materially impacts consumers' behavior and induces them to purchase the "discounted" products. A reference price (e.g., the strikethrough price advertised by Loft from which the advertised discounts and savings are calculated) affects a consumer's perception of the value of the transaction, the consumer's

---

CLASS ACTION COMPLAINT

- 15 -

HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

willingness to make the purchase, and the amount of money the consumer is willing to pay for the product.[2]

47.    When a reference price and corresponding discount is bona fide and truthful, it may help consumers in making informed purchasing decisions. In contrast, consumers are harmed when retailers, such as Loft, advertise their products with inflated false reference prices. The false reference prices deceive consumers, deprive consumers of a fair opportunity to accurately evaluate the offer, and result in purchasing decisions based on false pretenses.

48.    As a direct and proximate result of Loft's false reference prices and false discounts, Plaintiff and Class members were harmed and lost money or property.

49.    First, Plaintiff and Class members were harmed because they would not have purchased the products at the prices they paid had they known that the discounts were fake and that the products had not in fact been regularly offered at the higher reference price. *See Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013) ("[W]hen a consumer purchases merchandise on the basis of false price information, and when the consumer alleges that he

---

[2] *See, e.g.*, Richard Staelin, Joel E. Urbany & Donald Ngwe, *Competition and the Regulation of Fictitious Pricing*, 87 J. of Mktg. 826 (2023); Mark Armstrong & Yongmin Chen, *Discount Pricing*, 58 Econ. Inquiry 1614 (2020); Rajesh Chandrashekaran & Dhruv Grewal, *Assimilation of Advertised Reference Prices: The Moderating Role of Involvement*, 79 J. Retailing 53 (2003); Pilsik Choi & Keith S. Coulter, *It's Not All Relative: The Effects of Mental and Physical Positioning of Comparative Prices on Absolute Versus Relative Discount Assessment*, 88 J. Retailing 512 (2012); Larry D. Compeau & Dhruv Grewal, *Comparative Price Advertising: An Integrative Review*, 17 J. Pub. Pol'y & Mktg. 257 (1998); Larry D. Compeau, Dhruv Grewal & Rajesh Chandrashekaran, *Comparative Price Advertising: Believe It or Not*, 36 J. Consumer Aff. 284 (2002); David Friedman, *Reconsidering Fictitious Pricing*, 100 Minn. L. Rev. 921 (2016); Dhruv Grewal & Larry D. Compeau, *Consumer Responses to Price and its Contextual Information Cues: A Synthesis of Past Research, a Conceptual Framework, and Avenues for Further Research*, in 3 Rev. of Mktg. Res. 109 (Naresh K. Malhotra ed., 2007); Daniel J. Howard & Roger A. Kerin, *Broadening the Scope of Reference Price Advertising Research: A Field Study of Consumer Shopping Involvement*, 70 J. Mktg. 185 (2006); Aradhna Krishna, Richard Briesch, Donald R. Lehmann & Hong Yuan, *A Meta-Analysis of the Impact of Price Presentation on Perceived Savings*, 78 J. Retailing 101 (2002); Balaji C. Krishnan, Sujay Dutta & Subhash Jha, *Effectiveness of Exaggerated Advertised Reference Prices: The Role of Decision Time Pressure*, 89 J. Retailing 105 (2013); Gorkan Ahmetoglu, Adrian Furnham, & Patrick Fagan, *Pricing Practices: A Critical Review of their Effects on Consumer Perceptions and Behavior*, 21 J. of Retailing & Consumer Servs. 696 (2014); Bruce L. Alford & Abhijit Biswas, *The Effects of Discount Level, Price Consciousness and Sale Proneness on Consumers' Price Perception and Behavioral Intention*, 55 J. Bus. Res. 775 (2002); and Tridib Mazumdar, S. P. Raj & Indrahit Sinha, *Reference Price Research: Review and Propositions*, 69 J. Mktg. 84 (2005).

---

CLASS ACTION COMPLAINT

- 16 -

1  would not have made the purchase but for the misrepresentation, he has standing to sue under

2  the UCL and FAL because he has suffered an economic injury.").

3      50.    Consumers who are presented with discounts are substantially more likely to

4  make the purchase. "Nearly all consumers (94%) search for a deal or offer when shopping

5  online," "81% of [consumers] say finding a great offer or discount is on their mind throughout

6  the entire purchase journey," and "two-thirds of consumers have made a purchase they weren't

7  originally planning to make solely based on finding a coupon or discount." RetailMeNot

8  Survey: Deals and Promotional Offers Drive Incremental Purchases Online, Especially Among

9  Millennial Buyers (prnewswire.com).

10      51.    Additionally, Loft's advertised limited-time sales events created a false sense of

11  urgency, which made consumers more likely to make a purchase. Studies and articles have

12  documented how limited-time sales induce customers to purchase products. For example, a

13  study regarding the effect of time-limited advertisements concluded that "[t]he willingness to

14  buy was significantly higher" and "the attitude towards the deal was more favourable."[3]

15      52.    Second, Plaintiff and Class members were harmed because they did not receive

16  the benefits of their bargains. Plaintiff and Class members did not enjoy the actual discounts

17  Loft represented and promised to them. Plaintiff and Class members did not receive products

18  that were worth the inflated amount that Loft represented to them; the products did not

19  regularly sell for, and did not have a market value of, the fictitious reference price advertised by

20  Loft.

21      53.    Third, Plaintiff and Class members were harmed because they paid a price

22  premium due to illegitimately inflated demand resulting from Loft's deceptive pricing scheme.

23  Loft's false discount advertising scheme artificially increased consumer demand for Loft's

24  products, which shifted the demand curve and allowed Loft to charge more for its products than

25  it otherwise could have charged (i.e., a price premium) absent the misrepresentations.

26

27      ───────────────────

28  [3] Aggarwal, P., *Use it or lose it: Purchase acceleration effects of time-limited promotions*, Journal of Consumer Behaviour (September 17, 2002) at 399–401.

---

CLASS ACTION COMPLAINT

- 17 -

HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

54.    Loft's false discount advertising scheme enabled Loft to charge everyone more for all its products by artificially stimulating demand based on false pretenses. *See, e.g.*, Richard Staelin, Joel E. Urbany & Donald Ngwe, *Competition and the Regulation of Fictitious Pricing*, 87 J. of Mktg. 826, 836 (2023) (observing that "numerous empirical studies on the effects of promotions" have shown that promotions cause an "outward shift" in the demand curve (i.e., a price premium), which can be "substantial"). Without the misrepresentations, Loft would have had to charge less for its products in order to enjoy the same level of demand.

55.    In addition to harming consumers, the practice of employing false reference prices and false discounts also negatively affects the integrity of competition in retail markets. A retailer's use of false reference prices and false discounts constitutes an unfair method of competition and harms honest competitors that sell the same or similar products, or otherwise compete in the same market, using valid and accurate reference prices and true "sales." Businesses who play by the rules—and the investors in those businesses—are penalized if the unlawful advertising practices of their competitors go unchecked.

56.    Federal and state courts have articulated the abuses that flow from false discount advertising practices like those perpetrated by Loft. For example, the Ninth Circuit explained: "Most consumers have, at some point, purchased merchandise that was marketed as being 'on sale' because the proffered discount seemed too good to pass up. Retailers, well aware of consumers' susceptibility to a bargain, therefore have an incentive to lie to their customers by falsely claiming that their products have previously sold at a far higher 'original' price in order to induce customers to purchase merchandise at a purportedly marked-down 'sale' price." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1101 (9th Cir. 2013).

57.    The California Court of Appeal has likewise recognized the importance of California's false discount advertising statutes in protecting consumers: "Our Legislature has adopted multiple statutes that specifically prohibit the use of deceptive former price information and misleading statements regarding the amount of a price reduction. … These statutes make clear that … our Legislature has concluded 'reasonable people can and do attach importance to [a product's reference price] in their purchasing decisions.'" *Hansen v.*

HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

1     *Newegg.com Americas, Inc.*, 25 Cal. App. 5th 714, 730 (2018) (quoting *Kwikset Corp. v.*

2     *Superior Ct.*, 51 Cal. 4th 310, 333 (2011)).

3         58.     California law prohibits false reference pricing practices such as those

4     perpetrated by Loft.

5         59.     California's Consumers Legal Remedies Act (CLRA) prohibits "advertising

6     goods or services with the intent not to sell them as advertised," and specifically prohibits

7     "[m]aking false or misleading statements of fact concerning reasons for, existence of, or

8     amounts of, price reductions." Cal. Civ. Code § 1770(a)(9), (13).

9         60.     California's False Advertising Law (FAL) prohibits businesses from making

10    statements they know or should know to be untrue or misleading. Cal. Bus. & Prof. Code

11    § 17500. This includes statements falsely indicating that a product is on sale, when it actually is

12    not. Moreover, the FAL specifically provides that "[n]o price shall be advertised as a former

13    price … unless the alleged former price was the prevailing market price … within three months

14    next immediately preceding [the advertisement] or unless the date when the alleged former

15    price did prevail is clearly, exactly and conspicuously stated in the advertisement." Cal. Bus. &

16    Prof. Code § 17501.

17         61.     Finally, California's Unfair Competition Law broadly bans all unlawful, unfair,

18    and deceptive business practices. Cal. Bus. & Prof. Code § 17200.

19         62.     In addition, the Federal Trade Commission's regulations prohibit false or

20    misleading "former price comparisons." 16 C.F.R § 233.1. For example, an advertised former

21    price is false when it is "an artificial, inflated price [that] was established for the purpose of

22    enabling the subsequent offer of a large reduction—the 'bargain' being advertised is a false

23    one; the purchaser is not receiving the unusual value he expects." 16 C.F.R § 233.1(a).

24         63.     A UCL claim may also be predicated on a violation of the Federal Trade

25    Commission's regulations under the UCL's "unlawful" prong. *Rubenstein v. Neiman Marcus*

26    *Grp. LLC*, 687 F. App'x 564, 567 (9th Cir. 2017).

27         64.     As alleged in detail above, Loft's advertised reference prices and discounts

28    violate California law because, based on the investigation of Plaintiff's counsel, Loft's

---

HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

advertised reference prices are inflated and fictitious, and Loft's advertised percentage-off discounts are false. Loft advertises perpetual discounts for its products, and thus rarely, if ever, offers its products at their advertised reference price.

65.     Additionally, because Loft advertises perpetual discounts of between 30% to 60% off, its advertised former prices were not the prevailing market price in the three months immediately preceding the advertisement. See Cal. Bus. & Prof. Code § 17500. This is true because virtually all the products sold by Loft are exclusive to Loft and are not available anywhere else (i.e., Loft *is* the market). *People v. Superior Ct. (J.C. Penney Corp.)*, 34 Cal. App. 5th 376, 409 (2019).

66.     Because Loft's advertised former prices are consistently always higher than its actual former prices for the products, those advertised former prices were not the prevailing market prices during the requisite three-month period. *See id.* at 417.

67.     The false reference price and false discount representations by Loft were material to the decisions of consumers to purchase each product. Because of the false reference price and false discount representations, consumers reasonably believed they would be receiving significant savings if they purchased these products, and consumers purchased these products on the basis of these representations in order to enjoy the purported discounts.

68.     Loft's false discount advertising is so pervasive across all its products and all its advertising that it is apparent that the heart of Loft's marketing plan is to deceive the public.

69.     Loft's intent is to deceive consumers into believing that its products are worth, and have a market value equal to, the inflated reference price (the strikethrough reference price), and that the lower advertised actual price represents a special bargain.

70.     The false or misleading nature of Loft's reference prices and discounts was, at all relevant times, masked or concealed such that an ordinary consumer exercising reasonable care under all circumstances would not have known or discovered their false or misleading nature.

HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

71.     As a direct and proximate result of Loft's acts and omissions, all consumers who have purchased a product from Loft that was advertised with a reference price or purported discount have been harmed and have lost money or property.

72.     Loft continues to advertise false reference prices, false discounts, and false limited-time savings to this day. There is no reason to believe that Loft will voluntarily and permanently cease its unlawful practices. Moreover, in the unlikely event that Loft were to cease its unlawful practices, Loft can and is likely to recommence these unlawful practices.

73.     In acting toward consumers and the general public in the manner alleged herein, Loft acted with and was guilty of malice, fraud, and oppression and acted in a manner with a strong and negative impact upon Plaintiff, the Class, and the public.

## VII.    PLAINTIFF SARAH ROBBINS' PURCHASES

74.     Plaintiff Sarah Robbins is, and at all relevant times has been, a citizen and resident of the city of Tehachapi, in Kern County, California.

75.     Ms. Robbins is a victim of Loft's false discount advertising scheme.

76.     As detailed above, Loft's false discounting practices have been ongoing since at least 2018. During this time, Ms. Robbins purchased numerous products from Loft that were advertised with a false reference price and a false discount.

77.     For example, on August 9, 2025, Ms. Robbins visited the Loft website to shop for clothing. While browsing the Loft website, Ms. Robbins viewed pricing and discount representations similar to those described and presented in detail above. Every item that Ms. Robbins viewed had a strikethrough reference price, alongside a lower offer price. Loft also advertised on the webpages that every item was at a specified percentage-off savings.

78.     The products Ms. Robbins viewed on the Loft website included a "Lou & Grey Luvstretch Side Pocket Leggings," Style # 754493 (the "Leggings") and a "Lou & Grey Washed Cozy Cotton Sweatshirt," Style # 778050 (the "Sweatshirt"). Ms. Robbins viewed webpages advertising that the Leggings and Sweatshirt were on "sale" for $29.97 and $39.97 from much higher regular prices of $59.95 and $79.95, respectively, which were represented as

HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

1   strikethrough reference prices. Loft also advertised that both the Leggings and the Sweatshirt

2   were at a purported "50% OFF" from the strikethrough reference prices.

3       79.     Based on Loft's representations, Ms. Robbins believed she needed to act fast

4   and purchase the Leggings and Sweatshirt now to take advantage of the special sale before the

5   items returned to their normal full prices.

6       80.     Ms. Robbins then proceeded through the online checkout process. In the online

7   shopping cart and during the checkout process, Ms. Robbins continued to see representations

8   that the Leggings and Sweatshirt were on "sale" for $29.97 and $39.97, respectively, at "50%

9   OFF" from much higher strikethrough reference prices.

10      81.     Relying on these representations of receiving a special and significant discount,

11  Ms. Robbins completed the checkout process and purchased the Leggings and Sweatshirt.

12      82.     Relying on Loft's representations, Ms. Robbins reasonably believed that the

13  Leggings and Sweatshirt were normally offered and sold by Loft on its website at the higher

14  advertised strikethrough reference prices of $59.95 and $79.95, respectively. Ms. Robbins

15  reasonably believed that the Leggings and Sweatshirt were worth, and had a value of, the

16  higher stated reference prices of $59.95 and $79.95, respectively. Ms. Robbins reasonably

17  believed that the advertised "sale" prices of $29.97 and $39.97 represented a special bargain,

18  where Loft was temporarily offering the Leggings and Sweatshirt at significant discounts from

19  their regular and normal selling prices.

20      83.     However, Loft's representations and advertised discounts were false and

21  deceptive. In reality, and unbeknownst to Ms. Robbins, Loft had never offered the Leggings

22  and Sweatshirt at the higher purported reference prices on its website—just as Loft had never

23  offered any of the thousands of other products on its website at their advertised reference

24  prices. For example, counsel's investigation found that Loft had perpetually offered the

25  Sweatshirt at purported discounts (typically between 30% and 50% off) since at least July 8,

26  2025 through the date of her purchase on August 9, 2025. Ms. Robbins's counsel also found

27  that Loft had perpetually offered the Leggings at purported discounts (typically between 30%

28  and 55% off) since at least May 11, 2025 through the date of her purchase on August 9, 2025.

CLASS ACTION COMPLAINT

- 22 -

Counsel's data further shows that Loft has continued to perpetually offer the Sweatshirt and the Leggings at a purported discount of 50% off or more through the date of the filing of this Complaint.

84.    The advertised reference prices were not Loft's regular offering price for the Leggings and Sweatshirt and did not reflect the market values of the Leggings and Sweatshirt. Ms. Robbins did not receive the advertised and promised savings from the true regular prices of the Leggings and Sweatshirt.

85.    Loft's advertised reference prices and discounts for the Leggings and Sweatshirt were material misrepresentations and inducements to Ms. Robbins's purchase.

86.    Ms. Robbins reasonably relied on Loft's material misrepresentations. If Ms. Robbins had known the truth, she would not have purchased the Leggings and Sweatshirt at the prices she paid.

87.    As a direct and proximate result of Loft's acts and omissions, Ms. Robbins was harmed, suffered an injury-in-fact, and lost money or property.

88.    When Ms. Robbins shopped at Loft.com, she had no suspicion that Loft's advertised reference prices and discounts were false. Loft gave Ms. Robbins no reason to be suspicious. Ms. Robbins first learned of Loft's false discount advertising scheme in October 2025 when her attorneys told her about Loft's unlawful conduct and informed her that she was a victim of the scheme. Prior to this, Ms. Robbins did not know or suspect that Loft was engaging in a false discount advertising scheme or that she had been a victim of the scheme.

89.    Ms. Robbins has a legal right to rely now, and in the future, on the truthfulness and accuracy of Loft's representations regarding the advertised reference prices and discounts for its products.

90.    Ms. Robbins faces an imminent threat of future harm. Ms. Robbins would purchase from Loft again in the future if she could have confidence regarding the truth about Loft's price and discount representations. But without an injunction, Ms. Robbins has no realistic way of knowing which, if any, of Loft's reference prices, discounts, and sales are true.

HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

91.     Ms. Robbins will be harmed if, in the future, she is left to guess as to whether Loft is providing a legitimate sale or not, and whether its products are actually worth the amount that Loft is representing.

92.     If Ms. Robbins were to purchase again from Loft without Loft having changed its unlawful and deceptive conduct alleged herein, Ms. Robbins would be harmed on an ongoing basis and/or would be harmed once or more in the future.

93.     The deceptive practices and policies alleged herein, and experienced directly by Ms. Robbins, are not limited to any single product or group of products. Rather, Loft's deceptive discount advertising practices were, and continue to be, systematic and pervasive across all Loft's products.

## CLASS ALLEGATIONS

94.     Plaintiff brings this class action on behalf of herself and the following class:

> **All persons in California who, within the applicable limitations period, purchased from Loft one or more products advertised at a discount.**

95.     Plaintiff also brings this class action on behalf of the following subclass:

> **All persons in California who, within the applicable limitations period, purchased from Loft's website loft.com one or more products advertised at a discount.**

96.     In this Complaint, "Class" refers to both the class and subclass, collectively.

97.     Specifically excluded from the Class are Loft and any entities in which Loft has a controlling interest, Loft's agents and employees, the bench officers to whom this civil action is assigned, and the members of each bench officer's staff and immediate family.

98.     **Application of the Discovery Rule.** This Court should apply the discovery rule to extend any applicable limitations period and corresponding class period to the date on which Loft first engaged in its unlawful false discounting practices. (Based on counsel's investigation, Loft's false discount advertising practices have been ongoing since at least 2018 and likely

HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

began much earlier. However, without discovery, Plaintiff cannot determine the earliest date Loft first began advertising false discounts for its products.)

99.    The discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *E-Fab, Inc. v. Accts., Inc. Servs.*, 153 Cal. App. 4th 1308, 1318 (2007). Plaintiff and the members of the Class did not know, and could not have reasonably known, about Loft's unlawful conduct.

100.    When Plaintiff shopped at Loft.com, she had no suspicion that Loft's advertised reference prices and discounts were false. Loft gave Plaintiff no reason to be suspicious. Plaintiff first learned of Loft's false discount advertising scheme in October 2025 when her attorneys told her about Loft's unlawful conduct and informed her that she was a victim of the scheme. Prior to this, Plaintiff did not know or suspect—and had no reason to suspect—that Loft was engaging in a false discount advertising scheme or that she had been a victim of the scheme. *See Esgate v. Home Depot U.S.A., Inc.*, No. 6:24-CV-01806-MTK, 2025 WL 1207217, at *7–*8 (D. Or. Apr. 24, 2025) (holding that the plaintiff's claims did not begin to accrue under the discovery rule until the date his lawyers informed him that he was likely a victim of the defendant's false discount advertising scheme).

101.    Likewise, Class members would not have known or suspected that Loft was engaging in this deceptive pricing scheme. Reasonable consumers presume that retailers are not engaging in unlawful conduct. Reasonable consumers would have believed that Loft's pricing and discount representations were true.

102.    Reasonable consumers would have believed that Loft's strikethrough reference prices: (1) represented Loft's regular and normal prices that consumers had to pay for the products; (2) represented Loft's recent former prices for the products (that is, the prices at which the products were regularly offered for sale); and (3) represented Loft's prices that consumers would have to pay for the products when the sale ended.

103.    Reasonable consumers would have believed that Loft's advertised discounts represented a reduction from the regular and recent former prices of the products in the amounts advertised.

---

CLASS ACTION COMPLAINT

- 25 -

104.    Moreover, Plaintiff and the Class could not have, with the exercise of reasonable diligence, discovered Loft's false advertising scheme because, by design, its very nature is hidden and impossible for a reasonable consumer to discover.

105.    "The only way for a person to know that [a retailer's] advertised discounts were false is for the person to know [the retailer's] true historical selling prices for the products he or she purchased." *Clark v. Eddie Bauer LLC*, No. 2:20-CV-01106-RAJ, 2025 WL 814924, at *3 (W.D. Wash. Mar. 12, 2025). Consumers who shopped at Loft.com would have had no way to know, with the exercise of reasonable diligence, the true daily price histories and past selling prices for the products they viewed and purchased. Consumers would have had no way to know, with the exercise of reasonable diligence, that Loft's regular prices (i.e., the advertised strikethrough reference prices) were fictitious and inflated and that the advertised percentage-off savings were false.

106.    Plaintiff's counsel only found evidence for Loft's deceptive pricing scheme by conducting an extensive investigation that no reasonable person would conduct.

107.    **Numerosity.** The number of members of the Class are so numerous that joinder of all members would be impracticable. Plaintiff does not know the exact number of Class members prior to discovery. However, based on information and belief, the Class comprises tens of thousands of individuals. The exact number and identities of Class members are contained in Loft's records and can be easily ascertained from those records.

108.    **Commonality and Predominance.** This action involves multiple common legal or factual questions which are capable of generating classwide answers that will drive the resolution of this case. These common questions predominate over any questions affecting individual Class members, if any. These common questions include, but are not limited to, the following:

a.    Whether the alleged conduct of Loft violates the California Consumers Legal Remedies Act, California Civil Code § 1750 *et seq.*;

b.    Whether the alleged conduct of Loft violates the California False Advertising Law, California Business & Professions Code § 17500 *et seq.*;

HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

1          c.      Whether the alleged conduct of Loft violates the California Unfair

2 Competition Law, California Business & Professions Code § 17200 *et seq.*;

3          d.      Whether the alleged conduct of Loft violates 16 C.F.R § 233.1 *et seq.*;

4          e.      Whether Plaintiff and the Class have suffered injury and have lost money

5 or property as a result of Loft's unlawful conduct; and

6          f.      Whether Loft should be enjoined from engaging in the unlawful conduct

7 alleged herein.

8      109.   **Typicality.** Plaintiff's claims are typical of Class members' claims. Plaintiff and

9 Class members all sustained injury as a direct result of Loft's standard practices and schemes,

10 bring the same claims, and face the same potential defenses.

11      110.   **Adequacy.** Plaintiff and her counsel will fairly and adequately protect Class

12 members' interests. Plaintiff has no interests antagonistic to Class members' interests and are

13 committed to representing the best interests of the Class members. Moreover, Plaintiff has

14 retained counsel with considerable experience and success in prosecuting complex class action

15 and consumer protection cases.

16      111.   **Superiority.** A class action is superior to all other available methods for fairly

17 and efficiently adjudicating this controversy. Each Class member's interests are small

18 compared to the burden and expense required to litigate each of his or her claims individually,

19 so it would be impractical and would not make economic sense for Class members to seek

20 individual redress for Loft's conduct. Individual litigation would add administrative burden on

21 the courts, increasing the delay and expense to all parties and to the court system. Individual

22 litigation would also create the potential for inconsistent or contradictory judgments regarding

23 the same uniform conduct. A single adjudication would create economies of scale and

24 comprehensive supervision by a single judge. Moreover, Plaintiff does not anticipate any

25 difficulties in managing a class action trial.

26      112.   By its conduct and omissions alleged herein, Loft has acted and refused to act on

27 grounds that apply generally to the Class members, such that declaratory relief is appropriate

28 respecting the Class as a whole.

---

CLASS ACTION COMPLAINT

**HATTIS LUKACS & CORRINGTON**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

113.    Loft is primarily engaged in the business of selling goods. Each cause of action brought by Plaintiff against Loft in this Complaint arises from and is limited to statements or conduct by Loft that consist of representations of fact about Loft's business operations or goods that are or were made for the purpose of obtaining approval for, promoting, or securing sales of or commercial transactions in, Loft's goods; or the statements are or were made in the course of delivering Loft's goods. Each cause of action brought by Plaintiff against Loft in this Complaint arises from and is limited to statements or conduct by Loft for which the intended audience is an actual or potential customer, or a person likely to repeat the statements to, or otherwise influence, an actual or potential customer.

## CAUSES OF ACTION

## COUNT I

### Violation of the Consumers Legal Remedies Act ("CLRA")

### California Civil Code § 1750 *et seq*.

114.    Plaintiff realleges and incorporates by reference all paragraphs previously alleged herein.

115.    Plaintiff brings this claim in her individual capacity, in her capacity as a private attorney general seeking the imposition of public injunctive relief to protect the general public, and as a representative of the Class.

116.    Loft's products are "goods" as defined by California Civil Code § 1761(a).

117.    Loft is a "person," as defined by Cal. Civ. Code § 1761(c).

118.    Plaintiff and Class members are each "consumers," as defined by Cal. Civ. Code §1761(d).

119.    Plaintiff and Class members purchased Loft's products for personal, family, and/or household purposes, as meant by Cal. Civ. Code § 1761(d).

120.    Plaintiff and Class members' purchases from Loft each constitutes a "transaction," as defined by Cal. Civ. Code § 1761(e).

121.    Venue is proper under Cal. Civil Code § 1780(d) because Kern County, which is located in this District, is the county in which Plaintiff's transaction or any substantial portion

CLASS ACTION COMPLAINT

- 28 -

HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

thereof occurred, and it is a county in which Loft is doing business. Plaintiff's declaration establishing that this Court is a proper venue for this action is attached hereto as **Exhibit A.**

122.    The unlawful methods, acts or practices alleged herein to have been undertaken by Loft were all committed intentionally and knowingly. The unlawful methods, acts or practices alleged herein to have been undertaken by Loft did not result from a bona fide error notwithstanding the use of reasonable procedures adopted to avoid such error.

123.    Loft's conduct alleged herein has violated the CLRA in multiple respects, including, but not limited to, the following:

a.    Loft represented that its products had characteristics that they did not have (Cal. Civ. Code § 1770(a)(5));

b.    Loft advertised its products with an intent not to sell them as advertised (Cal. Civ. Code § 1770(a)(9));

c.    Loft made false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions (Cal. Civ. Code § 1770(a)(13)); and

d.    Loft misrepresented that its products were supplied in accordance with previous representations when they were not (Cal. Civ. Code § 1770(a)(16)).

124.    With respect to any omissions, Loft at all relevant times had a duty to disclose the information in question because, inter alia: (a) Loft had exclusive knowledge of material information that was not known to Plaintiff and Class members; (b) Loft concealed material information from Plaintiff and Class members; and (c) Loft made partial representations which were false and misleading absent the omitted information.

125.    Loft intentionally deceived Plaintiff and the Class, and continues to deceive the public, by advertising false discounts and false reference prices.

126.    Loft's misrepresentations deceive and have a tendency to deceive the reasonable consumer and the general public.

127.    Loft's misrepresentations are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

1    128.    As a direct, substantial, and/or proximate result of Loft's unlawful conduct,

2    Plaintiff and Class members were harmed, suffered injury-in-fact, and lost money or property.

3    129.    Plaintiff and Class members reasonably relied on Loft's material

4    misrepresentations, and would not have purchased Loft's products at the prices that they paid

5    had they known the truth.

6    130.    Additionally, Loft's advertised limited-time discounts for its products were false

7    and induced customers to purchase the products immediately before they supposedly returned

8    to the (fictitious) reference price.

9    131.    Plaintiff and Class members did not receive the benefits of their bargain.

10   Plaintiff and Class members did not enjoy the actual discounts that Loft represented and

11   promised to them. Plaintiff and Class members did not receive products that were worth the

12   inflated amount that Loft represented to them; the products did not regularly sell for, and were

13   not actually worth, the fictitious strikethrough reference price advertised by Loft.

14   132.    By its conduct and omissions alleged herein, Loft caused the demand for its

15   products to be artificially increased and caused all customers, including Plaintiff and Class

16   members, to pay price premiums to Loft. Put differently, as a result of its misrepresentations,

17   Loft has been able to charge a price premium for its products that it would not be able to charge

18   absent the misrepresentations. Without the misrepresentations, Loft would have had to charge

19   less for its products in order to enjoy the same level of demand.

20   133.    **Permanent public injunctive relief.** Plaintiff, acting as a private attorney

21   general, seeks public injunctive relief under the CLRA to protect the general public from Loft's

22   false advertisements, misrepresentations, and omissions.

23   134.    Loft's misconduct, which affects and harms the general public, is ongoing in

24   part or in whole and even if such conduct were to cease, it is behavior that is capable of

25   repetition or re-occurrence by Loft absent a permanent public injunction. Accordingly, Plaintiff

26   seeks an order enjoining Loft from committing the unlawful practices alleged herein.

27   135.    The balance of the equities favors the entry of permanent public injunctive relief

28   against Loft. Plaintiff, the members of the Class, honest competing businesses, and the general

---

CLASS ACTION COMPLAINT

- 30 -

1    public will be irreparably harmed from Loft's ongoing false advertising absent the entry of

2    permanent public injunctive relief against Loft.

3    136.    Plaintiff lacks an adequate remedy at law to prevent Loft from engaging in the

4    unlawful practices alleged herein. Plaintiff would purchase products from Loft again if she

5    could have confidence regarding the truth of Loft's prices and the value of its products.

6    Plaintiff will be harmed if, in the future, she is left to guess as to whether Loft is providing a

7    legitimate sale or not, and whether Loft's products are actually worth the amount that Loft is

8    representing.

9    137.    Monetary damages are not an adequate remedy at law for <u>future</u> harm. *Clark v.*

10   *Eddie Bauer LLC*, 2024 WL 177755, at *3 (9th Cir. Jan. 17, 2024). Monetary damages are

11   inadequate for future harm for the following reasons, without limitation: First, damages will not

12   prevent Loft from engaging in its unlawful conduct. Second, damages for future harm cannot

13   be calculated with certainty and thus cannot be awarded. For example, it is impossible to know

14   what products Plaintiff may want or need in the future. Third, injunctive relief is necessary (and

15   monetary damages do not provide a plain, adequate and complete remedy) because, without

16   forward-looking injunctive relief enjoining the unlawful practices, the courts may be flooded

17   with future lawsuits by Class members, Plaintiff, and the general public for future violations of

18   the law by Loft.

19   138.    In accordance with California Civil Code § 1782(a), Plaintiff, through counsel,

20   will be imminently serving Loft with notice of its CLRA violations by certified mail, return

21   receipt. If Loft fails to provide appropriate relief for its CLRA violations within 30 days of its

22   receipt of Plaintiff's notice letter, Plaintiff will amend this complaint to seek compensatory and

23   exemplary damages as permitted by Cal. Civ. Code §§ 1780 and 1782(b), along with attorneys'

24   fees and costs.

25

26

27

28

HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

1

## COUNT II

**Violation of California's False Advertising Law ("FAL")**

**California Business & Professions Code § 17500 *et seq.***

139.    Plaintiff realleges and incorporates by reference all paragraphs previously alleged herein.

140.    Plaintiff brings this claim in her individual capacity, in her capacity as a private attorney general seeking the imposition of public injunctive relief, and as a representative of the Class.

141.    Loft has engaged in false or misleading advertising in violation of California Business & Professions Code § 17500, *et seq.*, also known as California's False Advertising Law ("FAL").

142.    Loft has advertised discounts and reference prices that are false, misleading, and have a capacity, likelihood or tendency to deceive reasonable consumers. *See, e.g., Kasky*, 27 Cal.4th at 951 (UCL and FAL prohibit "not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public" (citation omitted)); *Hansen v. Newegg.com Americas, Inc.*, 25 Cal. App. 5th 714, 722 (2018) (same).

143.    Additionally, Loft has violated, and continues to violate, section 17501 of the Business and Professions Code by advertising former prices that were not true former prices and were not the prevailing market price in the three months immediately preceding the advertisement. Nor do Loft's former price advertisements state clearly, exactly, and conspicuously when, if ever, the former prices prevailed.

144.    With respect to omissions, Loft at all relevant times had a duty to disclose the information in question because, inter alia: (a) Loft had exclusive knowledge of material information that was not known to Plaintiff and Class members; (b) Loft concealed material information from Plaintiff and Class members; and (c) Loft made partial representations which were false or misleading absent the omitted information.

28

---

CLASS ACTION COMPLAINT

- 32 -

145.    Loft committed such violations of the FAL with actual knowledge that its advertising was untrue or misleading, or Loft, in the exercise of reasonable care, should have known that its advertising was untrue or misleading.

146.    Loft's misrepresentations and nondisclosures deceive and have a tendency to deceive the general public.

147.    Loft's misrepresentations and nondisclosures are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

148.    As a direct and proximate result of Loft's violations of the FAL, Plaintiff and Class members were harmed, suffered injury-in-fact, and lost money or property.

149.    Plaintiff and Class members reasonably relied on Loft's material misrepresentations, and would not have purchased Loft's products at the prices that they paid had they known the truth.

150.    Additionally, Loft's advertised limited-time discounts for its products were false and induced customers to purchase the products immediately before they supposedly returned to the (fictitious) reference price.

151.    Plaintiff and Class members did not receive the benefits of their bargains. Plaintiff and Class members did not enjoy the actual discounts that Loft represented and promised to them. Plaintiff and Class members did not receive products that were worth the inflated amount that Loft represented to them; the products did not regularly sell for, and were not actually worth, the fictitious and invented reference prices advertised by Loft.

152.    By its conduct and omissions alleged herein, Loft caused the demand for its products to be artificially increased and caused all customers, including Plaintiff and Class members, to pay price premiums to Loft. Put differently, as a result of its misrepresentations, Loft has been able to charge a price premium for its products that it would not be able to charge absent the misrepresentations. Without the misrepresentations, Loft would have had to charge less for its products in order to enjoy the same level of demand.

HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

153.    By its conduct and omissions alleged herein, Loft received more money from Plaintiff and Class members than it should have received. Loft should be ordered to disgorge or make restitution of all monies improperly accepted, received, or retained.

154.    Plaintiff seeks an order granting restitution to Plaintiff and Class members in an amount to be proven at trial. Plaintiff further seeks an award of attorneys' fees and costs under Cal. Code Civ. Proc. § 1021.5.

155.    **Permanent public injunctive relief.** Plaintiff, acting as a private attorney general, seeks public injunctive relief under the FAL to protect the general public from Loft's false advertisements, misrepresentations, and omissions.

156.    Loft's misconduct which affects and harms the general public is ongoing in part or in whole and even if such conduct were to cease, it is behavior that is capable of repetition or re-occurrence by Loft absent a permanent public injunction. Accordingly, Plaintiff seeks an order enjoining Loft from committing the unlawful practices alleged herein.

157.    The balance of the equities favors the entry of permanent public injunctive relief against Loft. Plaintiff, the members of the Class, honest competing businesses, and the general public will be irreparably harmed from Loft's ongoing false advertising absent the entry of permanent public injunctive relief against Loft.

158.    Plaintiff lacks an adequate remedy at law to prevent Loft from engaging in the unlawful practices alleged herein, as stated in Count I above.

159.    Monetary damages are not an adequate remedy at law for future harm, as stated in Count I above.

## COUNT III

### Violation of California's Unfair Competition Law ("UCL")

### California Business & Professions Code § 17200 *et seq.*

160.    Plaintiff realleges and incorporates by reference all paragraphs previously alleged herein.

HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

1    161.    Plaintiff brings this claim in her individual capacity, in her capacity as a private

2  attorney general seeking the imposition of public injunctive relief, and as a representative of the

3  Class.

4    162.    California Business & Professions Code § 17200, *et seq.*, also known as

5  California's Unfair Competition Law ("UCL"), prohibits any unfair, unlawful, or fraudulent

6  business practice.

7    163.    **"Unlawful" Prong.** Loft has violated the UCL by engaging in the following

8  unlawful business acts and practices:

9        a.    Making material misrepresentations in violation of Cal. Civ. Code

10  §§ 1770(a)(5), (9), (13), and (16) (the CLRA);

11        b.    Making material misrepresentations and omissions in violation of Cal.

12  Bus. & Prof. Code § 17500 *et seq.* (the FAL);

13        c.    Engaging in deceit in violation of Cal Civ. Code §§ 1709–1710; and

14        d.    Employing deceptive discount price advertisements as identified by

15  16 C.F.R § 233.1 *et seq.*

16    164.    **"Unfair" and "Fraudulent" Prongs.** Loft has violated the UCL by engaging in

17  the following unfair and/or fraudulent business acts and practices:

18        a.    Advertising false reference prices;

19        b.    Advertising false discounts, including stated percentage-off discounts;

20  and

21        c.    Advertising false "limited-time" sales and discounts.

22    165.    With respect to omissions, Loft at all relevant times had a duty to disclose the

23  information in question because, inter alia: (a) Loft had exclusive knowledge of material

24  information that was not known to Plaintiff and Class members; (b) Loft concealed material

25  information from Plaintiff and Class members; and (c) Loft made partial representations which

26  were false and misleading absent the omitted information.

27    166.    Loft's misrepresentations and nondisclosures deceive and have a tendency to

28  deceive the general public.

1    167.    Loft's misrepresentations and nondisclosures are material, in that a reasonable

2    person would attach importance to the information and would be induced to act on the

3    information in making purchase decisions.

4    168.    As a direct and proximate result of Loft's violations of the UCL, Plaintiff and

5    Class members were harmed, suffered injury-in-fact, and lost money or property.

6    169.    Plaintiff and Class members reasonably relied on Loft's material

7    misrepresentations, and would not have purchased Loft's products at the prices that they paid

8    had they known the truth.

9    170.    Additionally, Loft's advertised limited-time discounts for its products were false

10   and induced customers to purchase the products immediately before they supposedly returned

11   to the (fictitious) reference price.

12   171.    Plaintiff and Class members did not receive the benefits of their bargain.

13   Plaintiff and Class members did not enjoy the actual discounts that Loft represented and

14   promised to them. Plaintiff and Class members did not receive products that were worth the

15   inflated amount that Loft represented to them; the products did not regularly sell for, and were

16   not actually worth, the fictitious reference price advertised by Loft.

17   172.    By its conduct and omissions alleged herein, Loft caused the demand for its

18   products to be artificially increased and caused all customers, including Plaintiff and Class

19   members, to pay price premiums to Loft. Put differently, as a result of its misrepresentations,

20   Loft has been able to charge a price premium for its products that it would not be able to charge

21   absent the misrepresentations. Without the misrepresentations, Loft would have had to charge

22   less for its products in order to enjoy the same level of demand.

23   173.    By its conduct and omissions alleged herein, Loft received more money from

24   Plaintiff and Class members than it should have received. Loft should be ordered to disgorge or

25   make restitution of all monies improperly accepted, received, or retained.

26   174.    Loft's conduct and omissions alleged herein are immoral, unethical, oppressive,

27   unscrupulous, unconscionable, and/or substantially injurious to Plaintiff and Class members.

28   Perpetrating a years-long scheme of misleading and overcharging customers is immoral,

CLASS ACTION COMPLAINT

- 36 -

**HATTIS LUKACS & CORRINGTON**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

1  unethical, and unscrupulous. Moreover, Loft's conduct is oppressive and substantially injurious

2  to consumers. There is no utility to Loft's conduct, and even if there were any utility, it would

3  be significantly outweighed by the gravity of the harm to consumers caused by Loft's conduct

4  alleged herein.

5      175.    Plaintiff seeks an order granting restitution to Plaintiff and Class members in an

6  amount to be proven at trial. Plaintiff further seeks an award of attorneys' fees and costs under

7  Cal. Code Civ. Proc. § 1021.5.

8      176.    **Permanent public injunctive relief.** Plaintiff, acting as a private attorney

9  general, seeks public injunctive relief under the UCL to protect the general public from Loft's

10  false advertisements, misrepresentations, and omissions.

11      177.    Loft's misconduct which affects and harms the general public is ongoing in part

12  or in whole and even if such conduct were to cease, it is behavior that is capable of repetition or

13  re-occurrence by Loft absent a permanent public injunction. Accordingly, Plaintiff seeks an

14  order enjoining Loft from committing the unlawful practices alleged herein.

15      178.    The balance of the equities favors the entry of permanent public injunctive relief

16  against Loft. Plaintiff, the members of the Class, honest competing businesses, and the general

17  public will be irreparably harmed from Loft's ongoing false advertising absent the entry of

18  permanent public injunctive relief against Loft.

19      179.    Plaintiff lacks an adequate remedy at law to prevent Loft from engaging in the

20  unlawful practices alleged herein, as stated in Count I above.

21      180.    Monetary damages are not an adequate remedy at law for future harm, as stated

22  in Count I above.

23                          <u>**PRAYER FOR RELIEF**</u>

24      Plaintiff Sarah Robbins, on behalf of herself and the proposed Class, requests that the

25  Court order relief and enter judgment against Defendant Premium Brands Opco LLC d/b/a

26  LOFT as follows:

27      1.    Declare this action to be a proper class action, certify the proposed Class, and

28  appoint Plaintiff and her counsel to represent the Class;

CLASS ACTION COMPLAINT                    - 37 -

2.      Order that the discovery rule applies to extend any applicable limitations period and the corresponding class period back to the date Defendant first engaged in the unlawful conduct alleged herein;

3.      Declare that Defendant's conduct alleged herein violates the CLRA, FAL, and UCL;

4.      Order disgorgement and/or restitution, including, without limitation, disgorgement of all revenues, profits and/or unjust enrichment that Defendant obtained, directly or indirectly, from Plaintiff and Class members as a result of the unlawful conduct alleged herein;

5.      Permanently enjoin Defendant from engaging in the unlawful conduct alleged herein;

6.      Order that Defendant maintain the following records for at least two years for each daily product offering from the date of each advertisement and/or offer for sale of the product, for auditing purposes to ensure compliance with the ordered public injunctive relief: (1) the advertised reference price for each product; (2) the offer price and/or net selling price of each product; and (3) any discount that was advertised and/or applicable to each product;

7.      Retain jurisdiction to monitor Defendant's compliance with the permanent public injunctive relief requested hereinabove;

8.      Order Defendant to pay attorneys' fees, costs, and pre-judgment and post-judgment interest to the extent allowed by law; and

9.      Grant such other relief as this Court deems just and proper.

---

HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

1

**DEMAND FOR JURY TRIAL**

2

Plaintiff demands a trial by jury on all issues so triable.

3

4

Date: January 6, 2026.

5

6

Presented by:

7

HATTIS LUKACS & CORRINGTON

8

By: _____

9

Daniel M. Hattis (SBN 232141)
Email: dan@hattislaw.com

10

Paul Karl Lukacs (SBN 197007)
Email: pkl@hattislaw.com

11

11711 SE 8th Street, Suite 120

12

Bellevue, WA 98005
Telephone: (425) 233-8650

13

14

*Attorneys for Plaintiff*
*and the Proposed Class*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

CLASS ACTION COMPLAINT

- 39 -

# EXHIBIT A

1   Daniel M. Hattis (SBN 232141)
    Email: dan@hattislaw.com
2   Paul Karl Lukacs (SBN 197007)
    Email: pkl@hattislaw.com
3   HATTIS LUKACS & CORRINGTON
    11711 SE 8th Street, Suite 120
4   Bellevue, WA 98005
    Telephone: (425) 233-8650
5   Facsimile: (425) 412-7171

6   *Attorney for Plaintiff*
    *and the Proposed Class*
7

8

9               SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                          COUNTY OF KERN

11                          UNLIMITED CIVIL

12

13  SARAH ROBBINS,                          Case No.
    for herself,
14  as a private attorney general,
    and on behalf of all others similarly situated,   **DECLARATION OF SARAH ROBBINS**
15                                          **PURSUANT TO THE CALIFORNIA**
                                            **CONSUMERS LEGAL REMEDIES ACT**
16                          Plaintiff,      **(CAL. CIVIL CODE § 1780(d))**

17  v.
                                            **[FILED CONCURRENTLY**
18                                          **WITH COMPLAINT]**
    PREMIUM BRANDS OPCO LLC, D/B/A
19  LOFT

20                          Defendant.

21

22

23

24

25

26

27

28

CLRA DECLARATION OF                    **HATTIS LUKACS & CORRINGTON**
SARAH ROBBINS                          11711 SE 8th Street, Suite 120
                                       Bellevue, Washington 98005
                                       Tel: 425.233.8650 | Fax: 425.412.7171
                                       www.hattislaw.com

Zoho Sign Document ID: 2A6F09F7-QEDV8STF-TDCLIIW6GGI9BZ6CCOSPERIB4NY08CMYE4

1    I, Sarah Robbins, hereby declare and state as follows:

2    1.    I am over the age of 18 years, and am a plaintiff in the above-referenced civil

3    action.

4    2.    The facts contained herein are based on my personal knowledge except as to

5    facts stated upon information and belief and, as to those, I believe it to be true.

6    3.    This civil action pleads a cause of action for violation of the California

7    Consumers Legal Remedies Act ("CLRA") against Defendant Premium Brands Opco LLC

8    ("Loft" or "Defendant"). This civil action has been commenced in a county described in

9    Section 1780(d) of the California Civil Code as a proper place for the trial of the action.

10    4.    This action is being commenced in Kern County because Defendant is doing

11    business in Kern County.

   I declare under penalty of perjury under the laws of the State of California that the

12    foregoing is true and correct.

14    Executed in Tehachapi, California.

15

16

17    Date: __Dec 20 2025 11:19 PST__         _Sarah Robbins_

18                                            SARAH ROBBINS

19

20

21

22

23

24

25

26

27

28

---

CLRA DECLARATION OF
SARAH ROBBINS                      - 2 -

**HATTIS LUKACS & CORRINGTON**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER: 232141 | *FOR COURT USE ONLY* |
|---|---|---|
| NAME: Daniel M. Hattis, Esq. | | |
| FIRM NAME: Hattis Lukacs & Corrington | | |
| STREET ADDRESS: 11711 SE 8th St Ste 120 | | |
| CITY: Bellevue | STATE: WA    ZIP CODE: 98005 | |
| TELEPHONE NO.: 425.233.8650 | FAX NO.: 425.412.7171 | |
| EMAIL ADDRESS: dan@hattislaw.com | | |
| ATTORNEY FOR (name): Sarah Robbins, Plaintiff | | |

**ELECTRONICALLY FILED**
Superior Court of California,
County of Kern
By: Berenice Portes Gil
Deputy Clerk
**01/12/26 10:54 AM**

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF  KERN**
STREET ADDRESS: 1215 Truxtun Ave
MAILING ADDRESS: 1215 Truxtun Ave
CITY AND ZIP CODE: Bakersfield 93301
BRANCH NAME: Civil Division

CASE NAME:
Sarah Robbins v. Premium Brands Opco LLC d/b/a LOFT

| **CIVIL CASE COVER SHEET** | | **Complex Case Designation** | | CASE NUMBER: 26CUB00051 |
|---|---|---|---|---|
| [x] **Unlimited** (Amount demanded exceeds $35,000) | [ ] **Limited** (Amount demanded is $35,000 or less) | [ ] Counter   [ ] Joiner  Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | | JUDGE: DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Asbestos**
[ ] Asbestos (04)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/Unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[X] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Employment Development Department (EDD)**
[ ] EDD decision review (48)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.404)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Comprehensive groundwater adjudication (47)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

Judicial Council of California, courts.ca.gov
Rev. January 1, 2026, Mandatory Form
Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740
Cal. Stds. Jud. Admin., std. 3.10

**Civil Case Cover Sheet**

**CM-010**, Page 1 of 3
→

CM-010

2. Is this case complex under rule 3.400 of the California Rules of Court? [×] Yes [ ] No

If the case is complex, mark the factors requiring exceptional judicial management:

a. [ ] Large number of separately represented parties

b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve

c. [×] Substantial amount of documentary evidence

d. [ ] Large number of witnesses

e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court

f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply):

a. [×] monetary

b. [×] nonmonetary; declaratory or injunctive relief

c. [ ] punitive

4. Number of causes of action (specify): 3 (Cal Civ Code 1750, Cal Bus Prof Code 17500, Cal Bus Prof Code 17200)

5. Is this case a class action suit? [×] Yes [ ] No

6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: January 12, 2026

Daniel M Hattis, Counsel for Plaintiff
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

---

**NOTICE**

- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.

- File this cover sheet in addition to any cover sheet required by local court rule.

- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.

- Unless this is a collections case under rule 3.740 of the California Rules of Court or a complex case, this cover sheet will be used for statistical purposes only.

---

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET**

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on pages 1 and 2. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 of the California Rules of Court is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $35,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**SEE PAGE 3 FOR INFORMATION PURPOSES ONLY.**

---

Rev. January 1, 2026

**Civil Case Cover Sheet**

CM-010, Page 2 of 3

→